UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TROVIC, L.L.C., ET AL.                    CIVIL ACTION

VERSUS                                    NO: 07-7929

AXIS SURPLUS INSURANCE                    SECTION: R(5)
COMPANY AND KEVIN REINKE
INSURANCE AGENCY

**ORDER AND REASONS**

Before the Court are defendant Axis Surplus Insurance
Company's motion to amend its notice of removal to include the
Succession of Mary Saia as an intervening plaintiff and plaintiff
Trovic, L.L.C.'s motion to remand. For the following reasons, the
Court GRANTS defendant's motion to amend its notice of removal
and DENIES plaintiff's motion to remand.

**I.    BACKGROUND**

On August 28, 2007, plaintiff Trovic, L.L.C. sued Axis
Surplus Insurance Company, its commercial property insurer,  and

Kevin Reinke Insurance Agency, its insurance agent that procured the Axis policy, in state court after commercial property leased by Trovic suffered damage as a result of Hurricane Katrina. Trovic brings claims for breach of contract and improper claims adjustment against Axis and seeks damages and penalties under La. Rev. Stat. §§ 22:658, 22:1220. Trovic contends that Axis improperly assessed an 80 percent co-insurance penalty under the terms of Trovic's policy and that Axis failed to account for wind-caused property damage. Trovic further alleges that it had a "special relationship" with Reinke and that Reinke "repeatedly assured Trovic and its members that it would procure sufficient insurance to cover their business operations at all relevant times."[1] Trovic also contends that Reinke "failed to advise" Trovic about the amount and type of insurance necessary for a commercial location and that its Axis policy contained a co-insurance requirement.

On August 29, 2007, the Succession of Mary Saia intervened as a party-plaintiff in state court.[2] Saia owns the commercial property that is the subject of this suit and leased it to Trovic. Saia did not insure its property with Axis, nor did it directly deal with Reinke, but it alleges that it was "named as

---

[1] Trovic's Cmplt. at ¶ 16, R. Doc. 11-2 at 4.
[2] *See* Saia's Pet. for Intervention, R. Doc. 5-2 at 6.

2

an additional [insured] in the Axis Policy," and if not, that Axis should have known of Trovic's lessee status and Trovic's obligation to name Saia as an additional insured.[3] Saia brings substantially the same claims against Axis and Reinke that Trovic does.

Reinke first procured an Axis commercial property insurance policy, Certificate No. NF13495, for Trovic on August 2, 2004.[4] The policy provided $550,000 in coverage for damage to Trovic's leased building and $115,000 in coverage for damage to personal property, included an 80 percent co-insurance clause, and was effective from August 6, 2004 until August 6, 2005.[5] It listed Trovic as the only insured.[6] On July 19, 2005, Reinke notified Trovic that it had to renew its policy by August 6, 2005 and further informed Trovic that it could also obtain business income insurance through Axis as part of its renewal.[7] Trovic renewed its policy with the same building and personal property coverage limits and added $100,000 in business income coverage. Trovic's

---

[3] *See id.* at ¶¶ 9, 10, R. Doc. 5-2 at 7.
[4] *See* Reinke Aff. Dec. 11, 2007 (Reinke Aff.) at ¶ 10, R. Doc. 11-2 at 12; Reinke Aff. Ex. 6, R. Doc. 11-2 at 21-25.
[5] *See* Reinke Aff. at ¶ 10, R. Doc. 11-2 at 12; Reinke Aff. Ex. 7, R. Doc. 11-2 at 26-28.
[6] *See id.*
[7] *See* Reinke Aff. Ex. 9, R. Doc. 11-2 at 29.

3

renewed policy bore a new certificate number, AX10309, and was effective from August 6, 2005 to August 6, 2006.[8]

After Hurricane Katrina damaged Trovic's leased commercial property, Trovic filed a claim with Axis. Trovic is not specific about the date that it filed its claims or how much damage it claimed, but contends that it did so "in approximately October 2005."[9] Axis then processed Trovic's claims and made payment under the policy. Axis did not pay Trovic the full limits of its policy, and Trovic contends that it did not learn until October 2006 that the building owner had not been included as an insured and that it would not be able to recover its policy limits because it failed to satisfy the 80 percent co-insurance provision.[10] Trovic then filed suit against Axis and Reinke on August 28, 2007.

On November 2, 2007, Axis removed this case to federal court on diversity grounds. Initially, Axis named Trovic as the only plaintiff. On November 14, 2007, it moved to amend its notice of removal to include Saia. At issue here is whether Reinke is a properly joined defendant. No one disputes that the jurisdictional amount is met. Axis lacks citizenship or a

---

[8] *See* Reinke Aff. at ¶ 13, R. Doc. 11-2 at 13; Reinke Aff. Ex. 10, R. Doc. 11-2 at 30-31.
[9] *See* Pl.'s Mem. Supp., R. Doc. at 2.
[10] *See id.*

principal place of business in Louisiana, but Reinke is a citizen of Louisiana. Both Trovic and Saia are Louisiana citizens. As such, the parties are not completely diverse, a requirement for federal court to have diversity jurisdiction under 28 U.S.C. § 1332(a). *See McLaughlin v. Mississippi Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004). Axis contends that Reinke is improperly joined because there is no reasonable basis on which either plaintiff can state a claim under Louisiana law against Reinke. Axis further asserts that even if plaintiffs have a cause of action against Reinke, it is perempted under La. Rev. Stat. § 9:5606. Trovic now moves to remand this matter to state court, arguing that it discovered alleged gaps in its commercial property policy less than a year before it filed suit.

## II.  LEGAL STANDARDS

### A.  Applying Louisiana Law

Because jurisdiction is based on diversity, Louisiana law applies to the substantive issues before the Court. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In Louisiana, the sources of law are legislation and custom. *Shaw Constructors v. ICF Eng'rs, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004). These authoritative or primary sources of law are to be "contrasted with persuasive or secondary sources of law, such as [Louisiana

and other civil law] jurisprudence, doctrine, conventional usages, and equity, that may guide the court in reaching a decision in the absence of legislation and custom." *Id.* (*quoting* La. Civ. Code art. 1). In Louisiana, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes." *Id.* (quoting *Prytania Park Hotel, Ltd. v. General Star Indem. Co.,* 179 F.3d 169, 174 (5th Cir. 1999)). To make an 'Erie guess' on an issue of Louisiana law, the Court must "employ the appropriate Louisiana methodology" to decide the issue the way that it believes the Supreme Court of Louisiana would decide it. *Id.* (quoting *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003)).

**B.   Removal**

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). The removing party bears the burden of showing that federal jurisdiction exists. *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed. *See, e.g., Manguno*

*v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Neal v. Kawasaki Motors Corp.*, 1995 WL 419901, at *2 (E.D. La. 1995). Though the Court must remand the case to state court if at any time before final judgment it appears that it lacks subject matter jurisdiction, the Court's jurisdiction is fixed as of the time of removal. 28 U.S.C. § 1447(c); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996).

### C.   Improper Joinder

When a nondiverse party is properly joined as a defendant, a defendant may not remove under 28 U.S.C. § 1332. However, a defendant may remove by showing that the nondiverse party was improperly joined. *Smallwood v. Ill. Cent. R.R. Co.*, 352 F.3d 220, 222 (5th Cir. 2003). Because this doctrine is a narrow exception to the rule of complete diversity, the burden of demonstrating improper joinder is a heavy one. *Id*. Improper joinder may be established by showing: (1) actual fraud in pleading jurisdictional facts; or (2) the inability of the plaintiff to establish a cause of action against the nondiverse defendant.[11] *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 461 (5th Cir. 2003). In *Ross*, the Fifth Circuit clarified the standard for

---

[11] The Fifth Circuit now officially refers to "fraudulent joinder" as "improper joinder." *See Melder v. Allstate Corp.*, 404 F.3d 328, 329 (5th Cir. 2005). However, the term "fraudulent joinder" is still used in many Fifth Circuit cases, causing no shortage of confusion.

finding improper joinder when a defendant alleges that plaintiff is unable to state a claim against the nondiverse defendant. *Id*. at 462-63. The Court must determine whether there is arguably a reasonable basis for predicting that state law might impose liability on the nondiverse defendant. *Id*. (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). This means that there must be a reasonable possibility of recovery, not merely a theoretical one. *Id*. The standard for evaluating a claim of improper joinder is similar to that used in evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id*. The scope of the inquiry for improper joinder, however, is broader than that for Rule 12(b)(6), because the Court may "pierce the pleadings" and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for his or her claim. *Id*. (*citing Travis v. Irby*, 326 F.3d 644, 648-49 (5th Cir. 2003); *see also Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004). In conducting this inquiry, the Court "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis*, 326 F.3d at 649. In addition, the Court must resolve all ambiguities of state law in favor of the nonremoving party. *Id*.

8

### III. DISCUSSION

### A.    Amended Notice of Removal

As an initial matter, Axis may amend its notice of removal to include plaintiff-intervenor Saia. Amendments making only technical corrections or additions to a notice of removal, rather than alleging a new basis for federal jurisdiction that did not exist earlier, may be allowed before judgment and, in some circumstances, even at the appellate level. *See* 28 U.S.C. § 1653; *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919-20 (5th Cir. 2001); *Whitmire v. Victus Ltd. T/A Master Design Furniture*, 212 F.3d 885, 887-90 (5th Cir. 2000). After the expiration of the 30-day period for removal, a notice of removal may be amended to set forth more specifically the jurisdictional grounds for removal that were imperfectly stated in the original notice. *See D.J. McDuffe, Inc. v. Old Reliable Fire Ins. Co.*, 608 F.2d 145, 146 (5th Cir. 1979) (affirming district court's allowance to amend removal petition to allege citizenship properly). Axis alleges diversity jurisdiction as the basis for removal in the notice. Adding Saia, a Louisiana citizen, does nothing

to change the basis for removal. Accordingly, the Court will allow Axis to correct the omission in its amended notice.

### B.   Improper Joinder of Reinke

Plaintiffs complain that Reinke did not tell Trovic that Saia was not listed as an insured on the policy or that the policy included a co-insurance provision. They also contend that they did not discover these policy terms until October 2006 at the earliest. Plaintiffs contend that as a result of Trovic's alleged omissions, their property was not properly insured.

Plaintiffs' claims against Reinke are perempted under La. Rev. Stat. § 9:5606. The statute provides as follows:

> No action for damages against any insurance agent . . . whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed . . . within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

La. Rev. Stat. § 9:5606. Under the express terms of the statute, regardless of whether plaintiffs sued within one year of discovering their cause of action, the claim is still perempted if plaintiffs do not bring it within three years of the act, omission, or neglect. La. Rev. Stat. § 9:5606. Further,

10

peremptive statutes are not subject to suspension. *Reeder v. North*, 701 So. 2d 1291 (La. 1997).

A peremptive period will begin to run when the injured party has constructive knowledge of the facts that would entitle him to bring a suit. *Campo v. Correa*, 828 So. 2d 502, 510 (La. 2002) (explaining that a prescriptive period commences upon constructive knowledge); *Atlas Iron and Metal Co. v. Ashy*, 918 So. 2d 1205, 1210 (La. Ct. App. 2006) (stating that one-year peremptive period for legal malpractice claim begins at the time constructive knowledge is obtained). Information or knowledge that ought to excite attention and put the alleged victim on guard is sufficient to start the running of prescription. *Campo*, 828 So. 2d at 510. Knowledge of policy terms that directly contradict a statement by the agent who sold the policy is sufficient to excite the attention and put the insured on guard.

It is undisputed that Reinke provided Trovic with a copy of its commercial property policy in August 2004. The declarations page of this policy listed the name of the insured — Trovic — and indicated the policy limits, as well as the 80-percent co-insurance provision.[12] Trovic does not contend that it never received a copy of its policy or that its policy did not set forth the terms of insurance. Even assuming that Reinke

---

[12] *See* R. Doc. 11-2 at 27.

misrepresented the terms of Trovic's policy in August 2004, Trovic knew or should have known of Reinke's wrongful conduct as of that time, as Trovic had a copy of its policy. Thus, Trovic had information in August 2004 — three years before it filed suit — that ought to have excited its attention to any errors in its policy. Because the alleged negligence of Reinke should have been discovered by plaintiffs more than one year from the date on which they filed suit, their claims against Reinke are perempted under La. Rev. Stat. § 9:5606.

Subsequent renewals of insurance policies do not restart the peremptive period on torts committed at the time of initial purchase. *See Biggers v. Allstate Ins. Co.*, 886 So. 2d 1179, 1182-83 (La. Ct. App. 2004); *Bel v. State Farm Mut. Auto. Ins. Co.*, 845 So. 2d 377, 382-83 (La. Ct. App. 2003); *see also Bordelon v. The Indep. Order of Foresters*, No. Civ. A. 05-2640, 2005 WL 3543815 at *3 (E.D. La. Oct. 4, 2005). Renewals can, however, restart the prescriptive basis when the "complained of conduct . . . consist[s] of separate and distinct acts, each of which gives rise to immediately apparent damages." *Biggers*, 886 So. 2d at 1182. The Court must inquire into whether the actions of the insurance agents at the time of renewal in August 2005 constituted an act separate from the initial policy procurement in August 2004. *Fidelity Homestead Ass'n v. Hanover Ins. Co.*, 458

12

F. Supp. 2d 276, 280 (E.D. La. 2006). Other than the addition of
the business income insurance in August 2005, there is no
suggestion that the terms of Trovic's of Trovic's commercial
property insurance policy changed. Trovic does not bring a claim
relating to its business income insurance. And even if it does
seek to recover under that policy provision, it was on notice of
the terms of its business income insurance when it first obtained
that insurance in 2005. It is unrefuted that Trovic received the
terms of its policy in August 2005. Therefore, the peremptive
period on any omissions with respect to Trovic's business income
insurance began to run in August 2005 when Trovic received its
renewed policy, more than one year before it filed suit.

Trovic acknowledges that it filed suit more than three years
after Reinke first procured its Axis propery policy, but it
argues that its claims against Reinke are not perempted because
it did not discover the co-insurance provision or that Saia had
not been included as an insured until October 2006, less than a
year before it filed suit. Defendant's unrebutted evidence,
however, indicates otherwise. Trovic mistakenly relies on two
cases in which there was an open question about when plaintiffs
had constructive knowledge of their policy terms. *See Roby v.
State Farm Fire and Cas. Co.*, 464 F. Supp. 2d 572, 578-79 (E.D.
La. 2006) (explaining that when plaintiffs knew of their agent's

alleged misrepresentation was an open factual question to be
resolved in favor of plaintiffs); *Richmond v. Chubb Group of Ins.
Companies*, Civ. A. No. 06-3973, 2006 WL 2710566, at *5 (E.D. La.
Sept. 20, 2006) (explaining that there was an open question of
fact as to when plaintiffs learned of their agent's alleged
error). Here, there is no similar open question of fact about
when Trovic had constructive knowledge of its policy terms.
Again, Axis has submitted an affidavit and supporting exhibits
that establish that Trovic received the terms of its policy in
2004 and that these terms did not change when Trovic renewed its
policy in 2005, except for the addition of business interruption
insurance. Trovic does not contend that these policy terms
changed, much less submit anything to rebut Axis's affidavit.
Trovic does not allege that it requested Reinke to procure
different coverage and that Reinke assured it that had done so or
that Reinke provided Trovic with an inaccurate copy of its
policy. In addition, Trovic does not contend that anything about
the 2005 renewed policy prevented it from knowing its policy
terms. In other words, Trovic does not allege any facts from
which the Court could infer that Trovic could not have known its
policy terms until October 2006. In the absence of any allegation
or evidence that suggests plaintiffs' or Reinke's actions somehow
triggered a new peremptive period after Trovic obtained its

14

policy in 2004, the Court finds that plaintiffs' claims against Reinke are perempted.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion to amend its notice of removal and DENIES plaintiff's motion to remand.

New Orleans, Louisiana, this __14th__ day of February 2008

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE